TOWN OF CLEARFIELD, Plaintiff-Respondent,

v.

Walter CUSHMAN, Defendant-Appellant.†

Court of Appeals

*No. 87–0420. Submitted on briefs December 10, 1987.—Decided February 10, 1988.*

(Also reported in 421 N.W.2d 865.)

† Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Ray C. Feldman, Jr.,* and *Vieth & Feldman,* of Mauston.

For the plaintiff-respondent the cause was submitted on the brief of *Dennis C. Schuh* and *Thompson and Schuh,* of Mauston.

Before Dykman, Eich and Sundby, JJ.

DYKMAN, J.   Walter Cushman appeals from a summary judgment in favor of the town of Clearfield adjudging him guilty of violating a town ordinance and assessing him a $3,000 forfeiture. The dispositive issues are whether sec. 66.058(2)(b), Stats.,[1] permits

---

[1]Section 66.058(2)(b), Stats., provides:

> In order to protect and promote the public health, morals and welfare and to equitably defray the cost of municipal and educational services required by persons and families using or occupying trailers, mobile homes, trailer camps or mobile home parks for living, dwelling or sleeping purposes, each city council, village board and town board may establish and enforce by ordinance reasonable standards and regulations for every trailer and trailer camp and every mobile home and mobile home park; require an annual license fee to operate the same and levy and collect special assessments to defray the cost of municipal and educational services furnished to such trailer and trailer camp, or

towns to regulate individual mobile homes outside mobile home parks and whether the town's ordinance is a zoning ordinance.[2] We conclude that sec. 66.058(2)(b) does not grant towns authority to regulate mobile homes outside mobile home parks. We also conclude that the town's ordinance is a zoning ordinance and that it was invalidly enacted. We therefore reverse.

Summary judgment methodology has been described many times. *In re Cherokee Park Plat,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983) sets out our standard of review in these cases. We need not repeat that methodology here, because both parties have agreed that the only question is whether the town ordinance is invalid because the town cannot regulate mobile homes outside mobile home parks. The dissent's concern with how Cushman allegedly violated the town's ordinance thus addresses an issue the parties did not choose to litigate.

Juneau county, in which the Town of Clearfield is located, enacted a comprehensive zoning ordinance in

---

mobile home and mobile home park. They may limit the number of units, trailers or mobile homes that may be parked or kept in any one camp or park, and limit the number of licenses for trailer camps or parks in any common school district, if the mobile housing development would cause the school costs to increase above the state average or if an exceedingly difficult or impossible situation exists with regard to providing adequate and proper sewage disposal in the particular area. The power conferred on cities, villages and towns by this section is in addition to all other grants and shall be deemed limited only by the express language of this section.

[2]Cushman also argues that the ordinance as a building ordinance is void because Clearfield did not adopt the ordinance in compliance with the Wis. Adm. Code, secs. ILHR 20.02(1)(a) and 20.06(1). This argument is raised for the first time on appeal, and therefore we do not address it. *State v. Dean,* 105 Wis. 2d 390, 402, 314 N.W.2d 151, 157–58 (Ct. App. 1981).

1968.[3] In 1979, Clearfield adopted an ordinance regulating mobile homes.[4] In October 1983, Cushman acquired approximately three acres of land in Clear-

---

[3]Juneau county rescinded this ordinance on December 14, 1976. A new zoning ordinance took effect on March 1, 1977.

[4]Section 9 of the town ordinance provides:

A trailer or mobile home may be installed as a dwelling or commercial structure in the Town of Clearfield only if a building permit is previously obtained. Permitting the use of such trailer or mobile home shall be subject to the restrictions as set forth herein for other dwellings and business structures.

No trailer or mobile home shall be authorized or permitted unless it has a minimum of 720 square feet. It is to be located on a lot or parcel of not less than 3 acres and must meet all other requirements for such structures as set forth in this ordinance. No permits shall be issued for a trailer or mobile home unless it is to be permanently affixed to the real estate so as to be an integral part thereof within 4 months from the date the permit is issued.

Trailers or mobile homes must be connected to sewage disposal system and have a well.

Footings shall be required under all trailer or mobile homes used as a dwelling or business structure; said footings to be at least 16 inches in diameter and placed not more than 10 feet apart and installed to a depth of at least 4 feet below ground level. Either round or square 16 inch supporting piers shall be placed upon the footings and the mobile home or trailer shall be attached thereto at the four corners of such trailer or mobile home.

All trailers and mobile homes used as a dwelling or business structure shall be provided with compatible skirting properly installed and maintained. The skirting shall be installed within four months of moving the trailer or mobile home onto the property.

There shall be an inspection to see that the septic system, well and foundation work has been completed. The inspector shall be a person authorized by the Town Board and the fee charged to the applicant.

This ordinance was amended and modified in 1981. It was superseded and replaced in 1984. The 1984 version is substantively the same as the prior version.

field and put a mobile home on the property. Clear-field began this action to remove the mobile home and to recover a forfeiture.

The parties stipulated that the mobile home violated the ordinance. However, Cushman claimed that the ordinance was void because Juneau county's zoning ordinance preempted the field, and that there-fore Clearfield had no authority to adopt the ordi-nance. The question therefore is not whether mobile homes can be regulated, but which unit of government may regulate them. The trial court granted the town's summary judgment motion, concluding that sec. 66.058(2)(b), Stats., gave Clearfield the power to regu-late individual mobile homes outside of mobile home parks.

The interpretation of statutes is a question of law which we review *de novo. City of Waukesha v. Salbas-hian,* 128 Wis. 2d 334, 347, 382 N.W.2d 52, 56 (1986). When statutory language is clear and unambiguous, it must be given its obvious and ordinary meaning. *State v. McKenzie,* 139 Wis. 2d 171, 176, 407 N.W.2d 274, 276 (Ct. App. 1987).

### *Section 66.058(2)(b)*

The trial court interpreted the words "every trailer and trailer camp and every mobile home and mobile home park," found in sec. 66.058(2)(b), Stats., as authorizing Clearfield to regulate the use and location of individual trailers not in trailer camps. The attorney general, however, interpreted this lan-guage to mean that municipalities may not regulate individual trailers located outside trailer camps if the county within which the town is located has a zoning

ordinance. 60 Op. Att'y Gen. 131, 133 (1971); 65 Op. Att'y Gen. 288, 289 (1976).

■

Though attorney general opinions are entitled only to such persuasive effect as appellate courts deem warranted, *State ex rel. La Follette v. Stitt,* 114 Wis. 2d 358, 375, 338 N.W.2d 684, 692 (1983), "[a]n opinion has considerable weight if the legislature later amends and revises a statute but makes no changes in response to the opinion." *State ex rel. North v. Goetz,* 116 Wis. 2d 239, 244–45, 342 N.W.2d 747, 750 (Ct. App. 1983), citing *Town of Vernon v. Waukesha County,* 99 Wis. 2d 472, 479, 299 N.W.2d 593, 598 (Ct. App. 1980), *aff'd,* 102 Wis. 2d 686, 307 N.W.2d 227 (1981). That is the situation regarding sec. 66.058(2)(b), Stats. 60 Op. Att'y Gen. 131 and 65 Op. Att'y Gen. 288 were followed by a comprehensive revision of sec. 66.058 in 1983. Though substantial changes were made to sec. 66.058, sec. 66.058(2)(b) remained intact. The legislature therefore impliedly adopted the 1971 attorney general's interpretation of sec. 66.058(2)(b). *Town of Vernon,* 99 Wis. 2d at 479–80, 299 N.W.2d at 598.[5]

---

[5]The dissent quotes the attorney general out of context. Section 66.058(3)(e), Stats., begins: "If a mobile home is permitted by local ordinance to be located outside of a licensed park ...." The attorney general concluded that this language indicated "that individual mobile homes ... may be regulated by local ordinance." 60 Op. Att'y Gen. 131, 132 (1971). However, the attorney general noted that this section "does not in itself grant specific authority to a town to regulate mobile homes." *Id.* The attorney general gave the question and his answer as follows:

> You have requested my opinion whether a town can have a more restrictive ordinance regulating the use and location of mobile homes or trailers outside mobile home parks than a county.

Examination of sec. 66.058, Stats., in its entirety shows that every applicable provision[6] of the statute deals with the regulation and licensing of mobile home parks and trailer camps. Accordingly, we interpret the words "every trailer and trailer camp and every mobile home and mobile home park," as did the attorney general, to give the town authority over mobile home parks and the units occupying parks, but not as authority to regulate individual trailers or mobile homes outside parks. Section 66.058 does not authorize Clearfield to regulate Cushman's mobile home.

### Section 60.61(2)(a–g)[7]

Towns have power to regulate the use and location of individual mobile homes under sec.

I am of the opinion that it probably cannot.

*Id.* at 131. In addition, the attorney general, in 65 Op. Att'y Gen. 288, 289 (1976), states, "However, sec. 66.058, Stats., does not grant towns general authority to regulate the use and location of individual mobile homes outside mobile home parks, 60 [Op. Att'y Gen.] 131, 133 (1971)."

[6]Section 66.058(3)(e), Stats., deals with the payment of a monthly parking permit fees for trailers parked outside of licensed parks and is not applicable to this dispute.

[7]Section 60.61(2)(a–g), Stats. (1983–84), provides:

(2) [I]f a town is located in a county which has not adopted a county zoning ordinance under s. 59.97, the town board, by ordinance, may:

(a) Regulate, restrict and determine: the areas within which agriculture, forestry, mining and recreation may be conducted; the location of roads, schools, trades and industries; the location, height, bulk, number of stories and size of buildings and other structures; the percentage of a lot which may be occupied; the size

60.61(2)(a–g), Stats. (1983–84), (formerly sec. 60.74). *See Racine County v. Alby*, 65 Wis. 2d 574, 582 n. 5, 223 N.W.2d 438, 441 (1974) (towns have independent zoning authority under sec. 60.74). However, this authority exists only if the county has not adopted a county wide zoning ordinance pursuant to sec. 59.97, Stats. *See Edelbeck v. Town of Theresa*, 57 Wis. 2d 172, 182a, 203 N.W.2d 694, 669 (1973) (where county had already adopted a county wide zoning ordinance under sec. 59.97, subsequent adoption of town ordinance was invalid); 65 Op. Att'y Gen. 288, 289 (towns do not have independent zoning authority when county has adopted a county wide zoning ordinance under sec. 59.97).

of yards, courts and other open spaces; the density and distribution of population; the location of buildings designed for specified uses; the trades, industries or purposes that may be engaged in or subject to regulation; and the uses for which buildings may not be erected or altered.

(b) Establish districts of such number, shape and area necessary to carry out the purposes under par. (a).

(c) Establish building setback lines.

(d) Regulate, restrict and determine the areas in or along natural watercourses, channels, streams and creeks in which trades and industries, filling or dumping, erection of structures and the location of buildings may be prohibited or restricted.

(e) Adopt an official map showing areas, outside the limits of villages and cities, suited to carry out the purposes of this section.

(f) Regulate, restrict and determine the location, height, bulk, number of stories and size of buildings and other structures and objects of natural growth in any area of the town in the vicinity of an airport owned by the town or privately owned, divide the territory into several areas and impose different restrictions for each area. In exercising its power under this paragraph, the town board may, by eminent domain, remove or alter any buildings, structures or objects of natural growth which are contrary to the restrictions imposed in the area in which they are located, except railroad buildings, bridges or facilities other than telegraph, telephone and overhead signal system poles and wires.

(g) Encourage the protection of groundwater resources.

Further sec. 60.62(3) (formerly sec. 60.74(7)) provides: "In counties having a county zoning ordinance, no zoning ordinance or amendment of a zoning ordinance may be adopted under this section unless approved by the county board." Accordingly, if the disputed ordinance is a zoning ordinance, the Town of Clearfield ordinance is invalid because it was not approved by the Juneau county board.[8]

Zoning is concerned with use regulation. *State ex rel. Albert Realty Co. v. Village Board,* 7 Wis. 2d 93, 98, 95 N.W.2d 808, 811 (1959). Zoning deals with the immediate use of land, *Town of Sun Prairie v. Storms,* 110 Wis. 2d 58, 68, 327 N.W.2d 642, 646 (1983), and seeks to control future development of land and buildings through regulation of existing conditions. *Albert Realty,* 7 Wis. 2d at 98, 95 N.W.2d at 811.

The town ordinance regulates land use and building development by setting minimum lot sizes, minimum side yards, minimum structure sizes, and regulating the type and location of structures. The town ordinance is a zoning ordinance because its purpose is to control land use and building development through regulation of existing conditions. It is therefore invalid because it was not approved by the Juneau county board.[9]

---

[8]Clearfield argues that because the ordinance contains a severability clause, we need not declare the whole ordinance invalid. However, the language of sec. 9 of the ordinance, which provides that "[p]ermitting the use of such ... mobile home shall be subject to the restrictions as set forth herein for other dwellings and business structures," includes by reference the rest of the ordinance. Therefore we must review the whole ordinance.

[9]The only part of the ordinance that may be valid is sec. 1, establishing minimum lot sizes and minimum street width.

*By the Court.*—Judgment reversed and cause remanded to trial court with instructions to grant summary judgment to defendant.

SUNDBY, J. (*dissenting*). This case does not involve an exercise of the town's zoning power, under sec. 66.058, Stats., or otherwise. Cushman is charged with violating specific provisions of the town's Subdivision and Building Ordinance, adopted September 17, 1981, and its Land Division and Building Ordinance, adopted March 15, 1984, which are not zoning regulations.[1] Both ordinances are involved because Cushman's mobile home was first located on the parcel on November 10, 1983 but has been occupied off and on through November 27, 1985.

The town's complaint alleges that Cushman violated these ordinances in the following respects: (1) He did not apply for or receive a building permit. (2) The mobile home does not meet minimum size requirements. (3) He has not provided the unit with a septic system or well.[2]

"[T]owns have the authority to regulate minimum lot size pursuant to sec. 236.45[, Stats.]." *Town of Sun Prairie,* 110 Wis. 2d at 61, 327 N.W.2d at 643. Cushman alleges that because the town has no planning agency, its subdivision ordinance is void. There is nothing of record regarding the existence or nonexistence of a planning board. Therefore we do not decide this question.

[1]The majority states that one of the dispositive issues is whether sec. 66.058(2)(b), Stats., permits towns to regulate individual mobile homes outside mobile home parks. It is not. The sole issue, as framed by the parties, is whether the Juneau County zoning ordinance preempts the regulation of mobile homes by the town, regardless of the source of the town's regulatory authority.

[2]The majority states that my concern with how Cushman violated the town's Subdivision and Building Ordinance and its Land Division and Building Ordinance "addresses an issue the

The Subdivision and Building Ordinance provided:

## Section 9

A trailer or mobile home may be installed as a dwelling or commercial structure in the Town of Clearfield only if a building permit is previously obtained. Permitting the use of such trailer or mobile home shall be subject to the restrictions as set forth herein for other dwellings and business structures.

No trailer or mobile home shall be authorized or permitted unless it has a minimum of 720 square feet. It is to be located on a lot or parcel of not less than 3 acres and must meet all other requirements for such structures as set forth in this ordinance. No permits shall be issued for a trailer or mobile home unless it is to be permanently affixed to the real estate so as to be an integral part thereof within 4 months from the date the permit issued.

Trailers or mobile homes must be connected to sewage disposal system and have a well.

---

parties chose not to litigate." This is a puzzling statement in view of the fact that Cushman was assessed a forfeiture of $3,000 for violating these ordinances. What the parties chose not to litigate was whether the ordinances in question were valid if the county ordinance did not preempt the field. The majority apparently believes that the extent of the town's authority to regulate mobile homes is contained in sec. 66.058, Stats. That is not the case. I suspect that Clearfield has adopted village board powers under sec. 60.10(2)(c), *see* sec. 60.22(3), Stats., and that is the source of its powers to adopt and enforce the ordinances in question. We need not search for the source of the town's authority, however, because the sole issue, as framed by the parties, is whether the regulations which the town seeks to enforce are preempted by the county zoning ordinance.

The ordinance made additional provisions with respect to footings, supporting piers, skirting and inspection. Sections 2 and 3 required a building permit for all buildings erected or placed in the town. Included in the information to be furnished were:

> f. Permits for adequate and safe private sewage disposal system or plans to hook up to a public system, with the approximate date of its completion.
>
> g. The proposed manner in which an adequate and safe supply of water will be provided and the approximate date of its completion.

These provisions were continued in the town's Land Division and Building Ordinance adopted March 15, 1984. Section 8 of both ordinances regulated mobile home parks, the March 15, 1984 ordinance more comprehensively than the earlier ordinance.

The majority rests its opinion on two bases: (1) 60 Op. Att'y Gen. 131 (1971), in which, the majority concludes, the attorney general opined that towns may not regulate mobile homes located outside of mobile home parks and (2) sec. 60.61(2)(a–g), Stats., which the majority concludes empowers towns to regulate mobile homes outside of mobile home parks but only if the regulatory measure has been approved by the county board.

The majority misreads 60 Op. Att'y Gen. 131. The attorney general opined that towns may not have more restrictive *zoning* ordinances regulating the use and location of mobile homes outside mobile home parks than the county which has a zoning ordinance. *Id.* The attorney general did not opine that towns had no authority to regulate individual mobile homes located outside of mobile home parks. He stated:

"[Section] 66.058(3)(e), Stats., recognizes that individual mobile homes as well as parks may be regulated by local ordinance." 60 Op. Att'y Gen. at 132. Section 66.058(3)(e) requires mobile homes permitted by local ordinance to be located outside of a licensed mobile home park to pay a monthly parking permit fee. The last sentence of that paragraph provides: "Nothing contained in this subsection shall prohibit the regulation thereof by local ordinance." As to this paragraph the attorney general stated: "Section 66.058(3)(e), Stats., does not *in itself* grant specific authority to a town to regulate mobile homes." 60 Op. Att'y Gen. at 132 (emphasis added).

The attorney general concluded that he was unable to find any authority other than sec. 66.058, Stats., for towns to regulate "the type of location" of individual mobile homes outside of mobile home parks. 60 Op. Att'y Gen. at 134. The attorney general did not, however, opine that towns had no authority to impose on individual mobile homes located outside of mobile home parks, subdivision, building and sanitary requirements. In fact, as the attorney general noted, sec. 66.058(3)(e) specifically recognizes that towns may regulate by local ordinance individual mobile homes.[3]

The majority misapplies sec. 60.61(2)(a–g), Stats. This section controls the exercise of a town's zoning

---

[3]The majority suggests that I quote the attorney general out of context. The suggestion demonstrates that it does not understand my point. I agree that the attorney general opined that he could find no authority other than sec. 66.058, Stats., to regulate the "type or location" of mobile homes. He did not opine, however, that towns could not, for example, require that mobile homes be served with a septic system or sanitary sewer, that they be securely tied down, and that they be properly skirted to avoid rat and mice infestation and the collection of debris.

power. The provisions of the ordinances which Cushman is charged with violating have nothing to do with zoning. Therefore, the requirement of sec. 60.62(3), that a town zoning ordinance have the approval of the county board, is inapplicable.

The majority points to the fact that the town ordinances set minimum lot size, minimum side yards, minimum structure sizes, and the type and location of structures. From this, the majority concludes that the ordinance is a zoning ordinance and therefore invalid because it was not approved by the Juneau County Board. The town does not seek to enforce such provisions of the ordinance, so the question is not presented whether these provisions constitute zoning. If such restrictions are, in fact, zoning regulations which may not be enforced by the town, Cushman has no standing to complain because the town does not propose to enforce those regulations against him. *See Jacobs v. Major,* 132 Wis. 2d 82, 103, 390 N.W.2d 86, 93 (Ct. App. 1986) (statute attacked must affect the litigant in some way), *modified on other grounds,* 139 Wis. 2d 492, 407 N.W.2d 832 (1987).

The majority refuses to apply the severability clause contained in sec. 11 of each ordinance because sec. 9 makes the use of individual mobile homes subject to the restrictions set forth in the ordinances for other dwellings and business structures. It is not necessary to apply the severability provision because none of the provisions of the ordinance which the town seeks to enforce constitute zoning regulations. However, I conclude the severability provisions are effective to sever from the ordinances any provision which could be construed to be a prohibited zoning regulation. *See Wis. Wine & Spirit Institute v. Ley,* 141 Wis. 2d 958, 972, 416 N.W.2d 914, 920 (Ct. App. 1987)

(factors to consider in deciding severability include viability of the severed portion standing alone).

Cushman stipulated that the sole issue before the trial court was whether or not the town ordinance was invalid because the county zoning ordinance had preempted the field. Whether the town has authority apart from sec. 66.058, Stats., to require building permits and to enact building and sanitary ordinances is not before us. As the issue has been framed by Cushman, I disagree with the majority's conclusion that the Juneau County zoning ordinance prevents the town from (1) requiring a building permit before a mobile home may be located outside of a mobile home park in the town; (2) requiring that mobile homes located outside of licensed mobile home parks meet a minimum size requirement; and (3) requiring that mobile homes located outside licensed mobile home parks be served with a septic system or well. The latter two requirements are exercises of the town's police power to preserve and protect the public health, safety and welfare. The building permit requirement is merely an enforcement tool. None of these requirements are attempted exercises of the town's zoning authority. Because the majority opinion will have a devastating effect on areas of legitimate regulation of mobile homes by towns, I cannot join it. I respectfully dissent.